**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>**Plaintiff**<br><br>v.<br><br>[3]  CÉSAR  E.  CARRERO-MARTÍNEZ,<br><br>**Defendant** | **CRIM. NO. 26-186-3 (RAM)** |

<u>**OPINION AND ORDER**</u>

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court is Defendant César E. Carrero-Martínez's ("Defendant" or "Mr. Carrero-Martínez") *Motion for De Novo Review of Detention Order and Request for Release on Conditions Pursuant to 18 U.S.C. § 3145(B)* ("*Motion*"). (Docket No. 128). For the reasons set forth below, the Court **GRANTS** the *Motion* subject to the conditions specified herein and in the separate order of release.

## I.    BACKGROUND

On May 8, 2026, a Grand Jury in this district returned an *Indictment* charging Mr. Carrero-Martínez and five co-defendants. (Docket No. 3). Of the twenty-four count *Indictment*, Defendant was charged with: racketeering, in violation of 18 U.S.C. § 1962(c) (Count One); racketeering conspiracy, in violation of 18 U.S.C. § 1962(d) (Count Two); conspiracy to import cocaine into the United States, in violation of 21 U.S.C. §§ 952(a), 960(a)(1) and (b)(1)(B)(ii), 963 (Count Three); conspiracy to distribute and

Criminal No. 26-186-3 (RAM)                                                    2

possess with the intent to distribute controlled substances, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii), (b)(1)(D), and 846 (Count Four); attempted importation of cocaine into the United States, in violation of 21 U.S.C. §§ 952(a), 960(a)(1) and (b)(1)(B)(ii), 963 (Count Six and Eight); importation of cocaine into the United States, in violation of 21 U.S.C. §§ 952(a), 960(a)(1) and (b)(1)(B)(ii) (Count Seven and Nine); possession of firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i)(Count Eighteen); money laundering, in violation of 18 U.S.C. § 1956(h)(Count Twenty); and unlawful monetary transactions, in violation of 18 U.S.C. §§ 1957(a), (b), and 2 (Count Twenty-Three and Twenty-Four). Id.

On May 15, 2026, Magistrate Judge Marcos E. López held a detention hearing and found that there were no conditions of release that would reasonably assure Defendant's future appearance and the safety of the community. (Docket No. 100). On June 15, 2026, Defendant filed the present *Motion* seeking *de novo* review of the Magistrate Judge's detention order. (Docket No. 128). He contends that although the charged offenses carry a rebuttable presumption of detention under § 3142(e)(3)(A)-(B), he does not pose a risk of flight or danger to the community and there are conditions of release that could be crafted to ensure his appearance before the Court and protect the community. Id. The

Criminal No. 26-186-3 (RAM)                                                    3

Court held a *de novo* hearing on June 23 and 24, 2026. (Docket No. 141 and 147). At the hearing, the Government called Homeland Security Investigations Special Agent Pedro R. Serrano-Ortiz ("SA Serrano"), who testified as to the investigation that led to the *Indictment* in this case and the evidence supporting the charges against Defendant. Id. The Government also proceeded by proffer and argued that Defendant represents both a flight risk and danger to the community. Defendant argued to the contrary. The parties requested that the Court also consider exhibits, evidence, and arguments previously submitted to Magistrate Judge López or filed on the docket.

After considering the evidence and the arguments of the parties, as well as the transcript of the initial detention hearing, the Court finds that Defendant has introduced sufficient evidence to rebut the 18 U.S.C. § 3142(e)(3) presumption and that the Government has not proven by the relevant standards that no conditions of release could reasonably assure the safety of the community and Defendant's appearance as required.

## II.  LEGAL STANDARD

### A. Standard of review for a detention or release order

A district court reviews a magistrate judge's order of detention or release under a *de novo* standard and "need not defer to the magistrate judge's findings or give specific reasons for

rejecting them." United States v. Cidraz-Santiago, 18 F. Supp. 3d 124, 126 (D.P.R. 2014) (citations omitted). A district court may also "take additional evidence or conduct a new evidentiary hearing" when "the defendant has placed relevant facts at issue." Id.

## B. The Bail Reform Act

Pursuant to the Bail Reform Act of 1984, a judicial officer must determine whether a person charged with an offense shall be detained or released pending trial. *See* 18 U.S.C. § 3142(a). Section 3142(e) of the Bail Reform Act provides that if, after conducting a hearing, "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." Id. § 3142(e).

### i.   Standard of proof

The standard of proof for detention on the grounds of dangerousness is clear and convincing evidence. Id. § 3142(f). Clear and convincing evidence is "more than preponderance of the evidence but less than beyond a reasonable doubt." United States v. Acevedo-Ramos, 600 F. Supp. 501, 509 (D.P.R. 1984) (citations omitted), *aff'd*, United States v. Acevedo-Ramos, 744 F.2d 203 (1st Cir. 1985). This standard requires "a high degree of certainty

Criminal No. 26-186-3 (RAM)                                              5

that the information presented supports the conclusion of dangerousness or risk to the obstruction of justice." Id. On the other hand, the standard of proof for detention on the grounds of risk of flight is preponderance of the evidence. United States v. Patriarca, 948 F.2d 789, 793 (1st Cir. 1991).

ii.  Factors the Court must consider

To determine whether there are conditions of release that assure a defendant's appearance and the safety of the community, judicial officers must consider the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's personal history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g).

iii. The 18 U.S.C. § 3142(e) presumption

18 U.S.C. § 3142(e) creates a rebuttable presumption that no conditions can reasonably assure the appearance of the defendant and the safety of the community where there is probable cause that a defendant has committed one of the crimes listed in the statute or in the other circumstances set forth therein. United States v. Vargas-Reyes, 220 F. Supp. 3d 221, 225 (D.P.R. 2016) (citing 18 U.S.C. § 3142(e)(3)). A grand jury indictment alone suffices to

Criminal No. 26-186-3 (RAM)                                                6

trigger the presumption. Id. (citing, *inter alia*, United States v. Vargas, 804 F.2d 157, 163 (1st Cir. 1986)).

In cases involving drug trafficking crimes, the presumption comes from "Congress's finding that drug traffickers often have the resources and foreign contacts to escape to other countries" and that "[f]orfeiture of even a large bond may be just a cost of doing business, . . . hence drug traffickers pose special flight risks." United States v. Palmer-Contreras, 835 F.2d 15, 17 (1st Cir. 1987); *see also* United States v. Dillon, 938 F.2d 1412, 1416-17 (1st Cir. 1991) (noting appellant-defendant remained risk of flight where drug organization "probably could absorb the loss of $200,000 worth of security"); United States v. Perez-Franco, 839 F.2d 867, 870 (1st Cir. 1988) (gravity of charges and non-citizen status makes the risk of flight pronounced); United States v. Jessup, 757 F.2d 378, 385 (1st Cir. 1985) (reviewing the evidence before Congress that drug offenders pose particular flight risk), *partially abrogated on other grounds by* United States v. O'Brien, 895 F.2d 810 (1st Cir. 1990).

Once triggered, the 18 U.S.C. § 3142(e)(3) presumption imposes on the defendant a burden of production. *See* Vargas-Reyes, 220 F. Supp. at 225. The defendant may satisfy the burden of production by introducing at least some evidence contrary to the facts presumed. Id. For that reason, "[t]he burden is not heavy."

Id. Notably, the burden of persuasion always rests with the Government in both presumption and non-presumption cases. Id.

However, the 18 U.S.C. § 3142(e)(3) presumption does not simply vanish once a defendant has produced some evidence. *See* Palmer-Contreras, 835 F.2d at 18; Jessup, 757 F.2d at 383-84, 387. Instead, judges must keep the presumption in mind as an additional factor to the four listed in Section 3142(g). *See* Palmer-Contreras, 835 F.2d at 18; Jessup, 757 F.2d 383-84, 387. In drug trafficking cases, the weight afforded to the presumption depends on how closely the defendant resembles the paradigmatic drug trafficker for whom the risk is particularly high; "the less those features resemble the congressional paradigm, the less weight the [court] will likely give to Congress's concern for flight." Jessup, 757 F.2d at 387; *see also* Palmer-Contreras, 835 F.2d at 18; Perez-Franco, 839 F.2d at 870.

### III. DISCUSSION

### A. The nature and circumstances of the offense charged

Mr. Carrero-Martínez was indicted on various counts of drug trafficking offenses. (Docket No. 3). Here, the presumption comes from 18 U.S.C. § 3142(e)(3)(A), *i.e.*, probable cause to believe that Defendant committed "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act" as well as 18 U.S.C. § 3142(e)(3)(B), *i.e.*,

probable cause to believe that Defendant committed "an offense under 18 U.S.C. §§ 924(c), 956(a), or 2332b." Given the severity of the punishment provided by the relevant statutes, this factor favors detention. However, as the Court will discuss, the remaining factors favor release.

**B. The weight of the evidence against Defendant**

The Government purports to have evidence that Defendant was involved in coordinating five international drug smuggling ventures, totaling at least 2,400 kilograms of cocaine. According to the Government, Mr. Carrero-Martínez would transfer boats in his name to others for use in the drug smuggling ventures; he also provided the electronic devices for these ventures, and would direct the actions of the people retrieving the kilograms of cocaine. The evidence includes witness testimony, text messages with coded language between Defendant and co-conspirators,[1] boats associated with the drug trafficking ventures that were in Defendant's name at some point, irregular financial transactions and links between Defendant and the electronic devices used during these ventures.

In response, Defendant argued the boat transfers were the regular course of business in the commercial and leisurely fishing

---

[1] The coded language referred to buckets of sealant, crabs, and rabbits and carrots for a stew.

community of the west coast of Puerto Rico and that the irregular financial transactions are not inherently illegal. He further noted that that the language in the text messages was not coded, but rather a typical conversation for Mr. Carrero-Martínez who lives in a coastal, agricultural area and owns real estate.

Being the prior owner of a boat involved in drug smuggling may be happenstance, but being the prior owner of at least three (3) boats involved in drug smuggling suggests a practice or pattern. Further, the Court credits SA Serrano's interpretation of certain text messages by the Defendant as using coded language rather than the Defendant's simplistic explanations. All told, Defendant's attempt to explain the proffered evidence away rings hollow and the weight of the evidence against Mr. Carrero-Martínez appears to be strong.

Regardless of the import or weight of the evidence proffered by the Government, the Court is not concerned with Mr. Carrero-Martínez's guilt or innocence at this stage. *See* 18 U.S.C. § 3142(j) ("Nothing in this section shall be construed as modifying or limiting the presumption of innocence."). The Court's task is to assess whether there is a set of conditions that "will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c). The Court finds that such conditions exist.

## C. Defendant's personal history and characteristics

The third factor—Defendant's personal history and characteristics—favors release pending trial. Defendant is a lifelong resident of Puerto Rico. He is married, has two adult children and one young child, and resides in a home he owns with his wife. Some of Mr. Carrero-Martínez's family members attended the *de novo* hearing. Defendant carries a U.S. passport, which is now in possession of the arresting agents, and his most recent travel was to the Dominican Republic and Spain. Finally, Defendant has no prior recorded criminal history.

In support of its argument that Defendant is a risk of flight, the Government avers that Mr. Carrero-Martínez has access to vast, unexplained wealth, likely from his drug trafficking ventures as well as from a business in the Dominican Republic. For example, the Government proffered that, although Defendant has a reported income of $60,000 or less for each of the years between 2019 and 2024, his wife owns a boat docked in the Dominican Republic with a self-reported value of $800,000. The Government further proffered Mr. Carrero-Martínez frequently travels to the Dominican Republic via boat and is a high-level member of an international drug trafficking organization with underworld contacts in the Dominican Republic, Colombia, and Venezuela.

Defendant has established he has strong community ties to Puerto Rico, rebutting the presumption under 18 U.S.C. § 3142(e). *See* <u>United States v. Newton</u>, 215 F.3d 1313 (1st Cir. 2020) (defendant's evidence of family and business ties to Puerto Rico, no prior criminal convictions, and compliance with pretrial release conditions sufficient to rebut presumption). The Government's proffer focused on the fact that the Defendant may have access to significant financial assets, his frequent travels by boat to the Dominican Republic, and his wife's ownership of a boat in the Dominican Republic. However, the nucleus of Defendant's family and business ties lies in Puerto Rico—including his wife, an eight (8) year old daughter with whom he resides, and his close relationship with his adult daughter who resides in Puerto Rico. Further, the Government failed to show how certain conditions, such as electronic monitoring, would be insufficient to ensure Defendant's appearance before the Court. Accordingly, the Court finds that the Government did not meet its burden of persuasion that Defendant is a risk of flight.

**D. The nature and seriousness of the danger to any person or the community that would be posed by Defendant's release**

The Government made several oblique arguments as to Defendant's potential to be a danger to the community if released. It argued that Defendant's drug trafficking organization has been involved in several violent incidents, including the murder of

four (4) bystanders. The Government further argued that, in 2023, Defendant showed up to the purported pickup location of a drug smuggling venture with a loaded firearm. In support of this argument, the Government presented testimony from SA Serrano who explained the drug trafficking organization's hierarchy and the evidence against Defendant. However, Mr. Carrero-Martínez argued that he is not charged with the murders, that he had a license to carry that firearm, and that he has no prior criminal history, violent or otherwise. Defendant further noted the Government seized his firearm in 2023 but did not charge him or detain him, showing they did not believe him to be a risk of flight or a danger to the community then or in the intervening years.

Notably, the Government did not present police reports, affidavits, testimony, or any other evidence that Defendant poses a continuing threat to public safety, and only relied on his ties to individuals charged with committing violent crimes to support Defendant's dangerousness. Accordingly, the Government has not met its burden to establish by clear and convincing evidence that there is no condition or combination of conditions that would reasonably assure the safety of other persons and the community.

The Court notes that the Government raises serious concerns, and drug trafficking itself is a serious offense. However, "the safety of the community can be reasonably assured without being

absolutely guaranteed." United States v. Tortora, 922 F.2d 880, 884 (1st Cir. 1990) (citing United States v. Orta, 760 F.2d 887, 891-92 (8th Cir. 1985) (en banc)). Accordingly, the Court imposes herein and in the separate order of release a series of conditions, including home incarceration and electronic monitoring, which, together, can reasonably assure public safety.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's *Motion for De Novo Review of Detention Order and Request for Release on Conditions Pursuant to 18 U.S.C. § 3145(B)* is **GRANTED**. Defendant César E. Carrero-Martínez **SHALL** be released subject to the following conditions:

1.  Defendant must not violate federal, state, or local law while on release.

2.  Defendant must cooperate in the collection of a DNA sample if it is authorized by 42 U.S.C. § 14135a.

3.  Defendant must advise the Court, the U.S. Probation Office, or the supervising officer in writing before making any change of residence or telephone number.

4.  Defendant must appear in court as required and, if convicted, must surrender as directed to serve a sentence that the Court may impose.

5.  Defendant will execute a secured bond binding Defendant to pay the United States the sum of $100,000 dollars in the event of a failure to appear as required or to surrender as directed for service of any sentence imposed.

6.  Defendant will submit a proposed third-party custodian, as approved by the U.S. Probation Office. The third-

Criminal No. 26-186-3 (RAM)                                    14

party custodian must agree to (a) supervise Defendant, (b) use every effort to assure his appearance at all court proceedings, (c) notify the Court immediately if Defendant violates a condition of release or is no longer in the custodian's custody, and (d) surrender any firearms he or she might possess. Defendant shall reside at his home.

7.    Defendant shall submit to location or electronic monitoring as directed by the U.S. Probation Office or supervising officer and comply with all the program requirements and instructions provided.

8.    Home incarceration with electronic monitoring: Defendant shall be restricted to a 24-hour-a-day lock-down at his home except for medical necessities and court appearance or other activities specifically approved by the Court.

9.    Defendant's release is conditioned upon qualification of the third-party custodian, as well as verification by the United States Probation Office of electronic monitoring device capability in the proposed residence.

10.   Defendant shall avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution.

11.   Defendant shall submit to supervision by and report on a regular basis to the United States Probation Office.

12.   Defendant will not use or unlawfully possess any narcotic drug or other controlled substances defined in 21 U.S.C. § 802 unless prescribed by a licensed medical practitioner.

13.   Defendant shall refrain from the excessive use of alcohol.

14.   Defendant should participate in a program of inpatient or outpatient substance abuse therapy and counseling as deemed necessary by the United States Probation Office or the Supervising Officer.

15.   Defendant shall submit to testing for a prohibited substance if required by the U.S. Probation Office or the Supervising Officer. Testing may be used with random

Criminal No. 26-186-3 (RAM)                                          15

frequency and may include urine testing, the wearing of a sweat patch, a remote alcohol testing system, and/or any form of prohibited substance screening or testing. The defendant must not obstruct or attempt to obstruct, or tamper with the efficiency and accuracy of prohibited substance screening or testing.

16. Defendant shall not possess a firearm, destructive device, or other dangerous weapon.

17. Defendant shall surrender any passport to the United States Probation Office.

18. Defendant shall not obtain a passport or other international travel document.

19. Defendant shall report, as soon as possible, to the United States Probation Office or the Supervising Officer any contact with any law enforcement personnel, including, but not limited to any arrest or questioning.

20. Defendant shall abide by the following restrictions on personal association, place of abode, and travel: Defendant shall reside at the address of record and shall not leave the jurisdiction of this District without first obtaining written permission from the Court.

21. Defendant shall not enter any airport or pier.

22. As an exception, the Chief United States Probation Officer or his designee, may authorize temporary changes of address and overseas travels to the mainland U.S. only, not exceeding 15 calendar days, provided the United States Attorney has no objection to it. If objected, request will have to be made in writing to the Court.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 26th day of June 2026.

s/Raúl M. Arias-Marxuach
UNITED STATES DISTRICT JUDGE